## Preston *versus* Jones.

*Conveyance of real estate to children, when not fraudulent and void as to subsequent creditors.*

1. A conveyance of real estate by a father to his sons in consideration of their agreement to pay his debts, is not fraudulent and void as to his future creditors: and where the debts amounted to the full value of the property purchased, the deed is not voluntary but for a valuable consideration.

2. Where, after the conveyance, the father retired from business, went to Europe, returned, and two years after the date of the deed, again commenced as a partner in another firm which subsequently failed; in an action of eject-ment by a creditor to recover the real estate thus previously conveyed, which he had purchased at sheriff's sale as the property of the father: *Held*, that the mortgages given by the father, after the date of the deed, upon the pro-perty, were not admissible in evidence on the part of the plaintiff as proof of ownership in the grantor, where there was no evidence of fraud or collusion.

[Preston v. Jones.]

ERROR to the District Court of *Philadelphia.*

This was an action of ejectment brought to December Term 1863, by Andrew M. Jones against Edward Preston, Jr., for ten houses and lots in Manayunk.

On the trial the counsel of the plaintiff offered and gave in evidence two deeds-poll from John Thompson, Esq., sheriff, to plaintiff, dated September 11th 1863, for the premises described in the writ of ejectment. And also the writ of ejectment and the sheriff's return thereto.

He then gave in evidence the following records of the said court, of the judgments and proceedings on which said premises were sold, viz., Sylvester J. Megargee, Irwin N. Megargee, and Theodore Megargee, trading as "Megargee Brothers," *v.* Edward Preston, Sr., Charles Kenworthy, and William Winterbottom, to September Term 1858, No. 2154. November 20th 1858, judgment against Edward Preston, Sr., $767.96; also, Samuel Maclay and John A. Sterritt, executors of the last will and testament of Joseph B. Ard, deceased, *v.* Edward Preston, Sr., and James Kenworthy, copartners, lately trading under the firm of "Edward Preston, Sr., & Company," to March Term 1861, No. 875; April 20th 1861, judgment $1449.75. The *fi. fa.* in each case was dated June 26th 1863, and the *vend. exp.* in each case was dated July 22d 1863; the premises in question were sold by the sheriff, and bought by the plaintiff.

The defendant by his counsel admitted that Edward Preston, Sr., had title to the said premises down to May 22d 1854, and thereupon the plaintiff closed his case.

The counsel of defendant offered and gave in evidence a deed, Edward Preston, Sr., and wife, to David Wallace and John F. Preston, dated 22d May 1854, recorded February 1st 1858, for, *inter alia,* the premises in dispute, in consideration of the sum of one dollar, lawful money of the United States of America, unto them well and truly paid, "as also of divers other good causes and valuable considerations, them hereunto moving."

Also a deed, David Wallace and John F. Preston to Edward Preston, Jr. (the defendant), dated 31st August 1861, and recorded November 7th 1861, for the same premises and for like consideration. And then called James M. Preston, who testified as follows:—

"I am a son of Edward Preston, Sr.; father gave up business in 1854, and conveyed the factory to me and my brothers, William H. and Edward Preston, Jr.; these houses he conveyed to his son, John F. Preston, and his son-in-law, David Wallace; father was indebted then in notes and bills to the amount of from $37,000 to $40,000, for cotton, wool, warps, dye-stuffs, and materials used in manufacturing. These houses were encumbered by building association mortgages. The floating debt was assumed by us when

[Preston *v.* Jones.]

we took the factory. We assumed to pay all his debts. In January 1854, father concluded to go out of business, and I, individually, agreed to pay the debts due the building associations. We, that is, E., W., and J. Preston, took the factory, and a deed was made to us. A deed was also given to Wallace and John F. for the houses. I paid all his debts that I knew of; all the floating debt of the factory, from $37,000 to $40,000; paid every dollar that was presented. I have hunted all the notes I could find. They are the indebtedness of father prior to 1854. Some of the notes are dated after the deed to me. They were given in settling up some old matters, I judge. I paid all the dues to the building associations after father left, in 1854. I paid the mortgages by the dues. The arrangement for fixing up the property was between us boys. There were about twenty houses, ten of them in dispute here. I paid in all $10,000 to $15,000 on all the houses to the building associations. These ten were worth $400 apiece in 1854. They were occupied by the factory hands. They are now worth $700 apiece. Father has not paid anything on account of the houses. He was in bad health when he went away to England in May 1854; he did not expect to return; he is seventy-two years old. He returned in the fall of the year somewhat improved. He was out of business until June or July 1856; then went into business with Kenworthy and Winterbottom; made satinetts, and consigned them to Remington & Co., until they failed in 1857, and that closed them out. We sold to E. Preston, Sr. & Company from $8000 to $10,000 worth of warps, which is not paid. We had no interest in that business. The factory was not worth what we paid. I and my brothers were with him in the factory before he made the deed. I was acquainted with his finances. We knew at the time what debts he owed. I think there is not a debt due in 1854 unpaid. The last instalment to the building association was paid in 1861."

On cross-examination the witness said : " Father transferred to E., W., and J. Preston, in 1854, the factory and machinery, the ground, small dye-house and boiler—nothing else; all the stock in the factory went with it. I could not now name all we got. No list, or inventory, or schedule was made. I think there was a statement giving an idea of the stock. It was all in the factory; none of it consigned. I have not the statement in my possession—I had in 1854. It was on a piece of paper. This is the account—this is the statement I refer to—it is in this book. These are the signatures of myself, my two brothers, and my father.

" There was a judgment-bond to father for $37,000 given by myself, William, and Edward. We concluded it was best not to keep any account with father, but just to pay off; and we kept no

[Preston v. Jones.]

account. I don't think we had any statement of the outstanding debts—only a rough arrangement in lead-pencil.

"We were interested in the business before, but not as partners. It was carried on in father's name. I was not on a fixed salary. As I required it, I asked for money, and he paid what I needed; $6 or $7 a week was all I required. Prior to 1854 each of us drew out what he needed; there was no definite arrangement. Father kept his bank account in Girard Bank. I don't know that he had a bank account in January 1854. I don't know where he had any before 1854. I was not familiar with the financial arrangement before 1854. I opened a bank account in the early part of 1854.

"I can't tell the amount of the debts to the building association. I suppose I assumed from $10,000 to $15,000. I assumed to pay these about a month after the transfer of the factory, or between that and the 1st of June. The stock in the building association was transferred to them as collateral to the mortgages."

Agreement, dated January 1st 1854, being read to the jury, witness states:—"Father wrote this. I think I was not present. I can't say where I first saw it. It was some time in January. I still keep an account in the Bank of Germantown. I think father had an account there. When I paid the mortgages some of them were assigned to William and myself—Edward had gone out of the firm. We have no charge in our books for the payment of the mortgages than this one, viz::—

"'Assignment of Mortgages.—The Manayunk Building and Saving Fund Association. WILLIAM H. and JAMES M. PRESTON. Without date. Acknowledged 25th of April 1860—recorded 28th, in Mortgage Book A. D. B., 55, 477.'"

Witness proceeded: "This assignment recites a consideration of $7000. I did not pay it that day. I judge it was all paid previously. Father paid his dues from 1850 to 1854.

"The stock of the building association was taken in part payment, and cancelled. The stock had run out. Father had borrowed on the stock to its extent. There were two other building associations. I paid dues to them. The others are satisfied. David Wallace was a manufacturer; John F. Preston was with him. There are no charges on our books of the $10,000 or $15,000 we paid."

After calling a number of witnesses to prove the payment of the debt of E. Preston, Sr., by E., W., and J. Preston, after the transfer of the property, the defendant closed his case.

The plaintiff in rebuttal offered in evidence:—Mortgage—Edward Preston, Sr., to "The Manayunk Building and Saving Fund Association," for $2000, dated July 27th 1855, and recorded August 14th 1855, in Mortgage-Book R. D. W., No. 14, page 533,

&c., which offer was objected to by the defendant, and rejected by the court.

Also offered four other mortgages given by Edward Preston, Sr., after his conveyance to his sons, one dated September 6th 1854, for $500 ; one dated March 25th 1856, for $600 ; one dated June 19th 1856, for $420 ; and one dated March 19th 1857, for $2000, which offers were severally overruled, and exceptions noted for plaintiff.

The plaintiff further offered two mortgages, given by Edward Preston, Sr., one to "The Manufacturers' and Mechanics' Building and Saving Fund Association of Manayunk," dated March 21st 1855, for $1400, and the other dated May 15th 1856, for $1200, upon the factory property conveyed to Edward, William, and James M. Preston ; which offer was objected to, overruled by the court, and exception noted for plaintiff. He further gave in evidence the records of the following judgments, obtained in the said court, against Edward Preston, Sr., who was sued with Kenworthy and Winterbottom, viz. :

| | | | | |
|---|---|---|---|---|
| Andrew M. Jones, | M. 1858, | 2682, | May 22d 1855, | $1015.82 |
| John Harding, Jr., | S. 1858, | 568, | Sep. 25th 1858, | 1021.89 |
| Sylvester J. Megargee, | S. 1858, | 2154, | Nov. 20th 1858, | 767.96 |
| Ellen C. Canavan, | M. 1859, | 904, | Apr. 23d 1859, | 485.88 |
| Samuel Maclay, | M. 1861, | 875, | Apr. 20th 1861, | 1449.75 |
| William Loeschigk, | J. 1861, | 1208, | Sep. 2d 1861, | 1657.67 |
| James T. Sutton, | J. 1862, | 761, | July 19th 1862, | 428.21 |
| Charles English, | D. 1862, | 1205, | Feb. 21st 1863, | 397.69 |

These were recovered on notes and drafts, dated July 27th, October 1st, December 5th, December 15th, 1857, and January 14th 1855, made by Thomas P. Remington & Co.

The plaintiff also offered to give in evidence a deed, dated 31st of August 1861, from David Wallace and wife, and John F. Preston and wife, to Catharine, wife of Walter Ellison (and daughter of Edward Preston, Sr.), in consideration of one dollar, and other good causes and valuable considerations, for nine houses not embraced in this ejectment, but included in the deed in evidence from Edward Preston, Sr., to said Wallace and John F. Preston ; which offer was overruled, and an exception was taken and noted for plaintiff. The testimony was then closed.

The court below (SHARSWOOD, J.) charged as follows :—

"This case is a very simple one. There are three principles of law which govern it. It is enough to state them. The first is, that a man not in debt, or who makes ample provision for his debts, may give his property to whom he pleases. It is one of the attributes of property that it may be given away at the will of the owner.

"2d. In order to enable subsequent creditors to levy on pro-

perty thus given away, it must appear that there was an actual intent to defraud creditors.

" 3d. The non-recording of the deed is of no consequence, so far as general creditors are concerned. The recording acts were not made for such creditors. General creditors, before trusting or selling, have no business to search the records. They should go to the property and inquire of the tenants and occupants who owns it. If they don't do that, but go to the recorder's office, they spend their money and time for nothing. The recording acts are intended for purchasers and mortgagees, and if the deed is recorded before the sheriff's sale it is in time.

" The first question is as to the validity of the deed of May 22d 1854. Had E. Preston, Sr., then a right to make a deed of gift, which I assume it was. Wallace and Preston gave nothing and undertook nothing. He gave them the property. Had he a right to do so ? What provision had he made for the payment of his debts ? You have the testimony of James M. Preston. If you believe him, he says that the mill and stock and machinery were transferred to the three sons, and they undertook to pay all his debts, and also the building association mortgages on these houses ; and that they have in fact paid them all. Has there been any evidence to show that this is not true ? Any creditors to show a debt not paid ? On the other hand, there is a confirmatory testimony. Several witnesses prove payments to a large amount. Riley proves $15,000, Scull $4200, and other witnesses are called to same point.

" I submit it to you as a question of fact, Was E. Preston, Sr., on 22d May 1854, indebted, or had he made full provision for his debts at that time ? If he had, he had a right to make this deed of gift to Wallace and J. F. Preston. We have nothing to do with the deed from them to the defendant.

" Secondly, to enable subsequent creditors to set aside this deed of gift, it must appear that there was actual intent to defraud them. The burden of proof is on those creditors who allege it. All the evidence in this case is that when this deed of gift was made, E. Preston, Sr., was in bad health, and went away on a voyage to England, and did not expect to return. He came back and remained out of business till 1856, and then became embarrassed and insolvent.

" I say that there is no evidence that on the 22d May 1854, there was any actual intent on the part of E. Preston, Sr., to defeat subsequent creditors. I don't see a shadow of proof or spark of evidence that he expected to cheat subsequent creditors, or to be insolvent in 1857.

" Now, if so, the fact that the deed was not recorded till February 1st 1858, makes no difference ; the recording act is not for creditors. If recorded before the sheriff's sale it is sufficient.

[Preston *v.* Jones.]

" I have been requested by counsel for defendant to charge you on the following points :—

" 1. A deed by a grantor not indebted at the time it is made, or, in case of his indebtedness, when he makes ample provision for the payment of his debts, even though the deed be a voluntary one, and without valuable consideration, is perfectly good against the grantor.

" 2. A deed such as described in the foregoing point, is good against subsequent creditors, when there is no evidence showing an intention, at the time it is made, to defraud subsequent creditors.

" 3. There is no evidence in this case showing that the deed from Edward Preston, Sr., to David Wallace and John F. Preston, was made in anticipation of future indebtedness on the part of the grantor, which fact subsequent creditors must show in order to defeat the deed.

" 4. If there is a voluntary conveyance of real estate by one not indebted at the time, or who, if indebted, provided for the payment of all his debts, if that voluntary conveyance was for a child, and no particular evidence or badge of fraud to deceive or defraud subsequent creditors appears, such a conveyance will be good, though afterwards the grantor becomes indebted.

" 5. A judgment-creditor is not a purchaser, and his judgment binds only the interest which the judgment-debtor had in the property at the date of the judgment.

" 6. The plaintiff, as purchaser at sheriff's sale, had notice at the time of his purchase, by the record of the deed, of the transfer of title from Edward Preston, Sr., to David Wallace and John F. Preston, as said deed was made and recorded before the rendition of the judgment under which he was buying.

" 7. The fraudulent intent of the grantor as to existing creditors, is a conclusion of law where the deed is a voluntary one, but where it is otherwise, the fraudulent intent is to be established as a fact by the party impugning the conveyance.

" All of the said points I affirm."

Under these instructions there was a verdict and judgment in favour of the defendant.

This writ was thereupon sued out by the plaintiff, who averred that the court below erred,

1. In rejecting the offer of the plaintiff below, to give in evidence a mortgage, made by Edward Preston, Sr., to the Manayunk Building and Saving Fund Association, for $2000, dated July 27th 1855, and recorded August 14th 1855, on the seven houses and lot, in said writ first described.

2. In rejecting the offer of the plaintiff below, to give in evidence four other mortgages, given by E. Preston, Sr., to said association, viz.:—

One ·dated Sept.  6th  1855, for $400, recorded Sept.  7th 1855,
"       March 25th 1856, for   600,   "              same day,
"       June 19th 1856, for   420,   "      June 28th 1856,
"       March 19th 1857, for 2000,   "      March 20th 1857,
all of them on the said seven houses.

3. In rejecting the offer of said plaintiff, to give in evidence
two mortgages, given by E. Preston, Sr., to the Manufacturers'
and Mechanics' Building and Saving Fund Association of Mana-
yunk, and each of them viz. :—

One dated March 21st 1855, for $1400, recorded March 23d 1855,
"       May 15th 1856, for  1200,   "      May 16th 1856,
said two mortgages being on the factory property conveyed to
Edward, William, and James M. Preston.

4. In rejecting the offer of plaintiff below, to give in evidence
the deed of 31st August 1861, from David Wallace and wife, and
John T. Preston and wife, to Catharine Ellison, for nine of the
houses embraced in the deed in evidence from E. Preston, Sr., to
said David and John F.

5. In affirming the third, fourth, sixth, and seventh points pre-
sented by the defendant below.

*E. S. Lawrence*, for plaintiff in error.—The first three specifi-
cations of error present the same question, although some of the
mortgages rejected were not upon the premises embraced in this
ejectment, but upon the neighbouring property, included in the
deeds to the other members of the Preston family.  Five of the
mortgages, namely, those mentioned in the first and second speci-
fications of error, were given on the premises sought to be reco-
vered in this suit.  The two mortgages named in the third
specification were upon the factory property.

In the absence of affirmative evidence of the delivery of the
deed to John F. Preston and David Wallace, outside of its own
terms, the plaintiff sought to show that it either never was deli-
vered, or if delivered, was collusive.  Upon either head the
repeated mortgages by the father were competent evidence ; not
perhaps conclusive, but still persuasive evidence for the jury, who
were the proper tribunal to weigh it.

These sons claim to have owned the property since 1854, with-
out the payment of a dollar for it ; are not shown to have had the
deed for it in their possession, or to have ever seen it, before it
was recorded on the very eve of judgment being obtained against
their father, the grantor.  It does not anywhere appear who
recorded the deeds.

Was it not competent to show that after the date of the pretended
conveyance, the father, had treated the property as his own, and
been recognised by others in his and its neighbourhood, as its

[Preston *v.* Jones.]

owner in the substantial recognition of loaning him large amounts of money upon it?

Had the sons thus far pretended any title? Did they take any steps whatever which could put strangers upon the track of any title in them?

So far as appears, the possession of the property and of the title-papers continued as before.

Creditors who, in 1857, are about to trust a party upon the strength of his owning a valuable mill property and some nineteen dwelling-houses, satisfy themselves by examination of the records, that he still owns them, and conclude to take his paper. This is dishonoured at maturity and is put in suit. On the eve of the obtaining of judgments, there start up three deeds, purporting to convey all of his real and personal estate for a nominal consideration to his children.

Bearing date in April and May 1854, these deeds first see the light the 1st day of February 1858, after the notes given by E. Preston, Sr., had matured, and before the judgments on them could be obtained.

There is not the slightest evidence (other than the production of the papers themselves) that the deeds were delivered at their date. On the contrary, the evidence seems irresistible that the grantor must have kept all the papers in his own possession, else the mortgagees would not have accepted the encumbrances. When he made the mortgages he must have produced the deeds and shown his title.

Where two or more are engaged in a common enterprise, the acts and declarations of one may be given in evidence against the others: Commonwealth *v.* Eberle, 3 S. & R. 9; Wilbur *v.* Strickland, 1 Rawle 458; Price *v.* Junkin, 4 Watts 85; and the least degree of concert or collusion between the parties makes the act of one the act of all and evidence against the others: Rogers *v.* Hall, 4 Watts 359; Gibbs *v.* Neeby, 7 Id. 305; McKee *v.* Gilchrist, 3 Id. 230; Reitenbach *v.* Reitenbach, 1 Rawle 362.

The evidence shows that while the father must have retained both the deeds to his sons and son-in-law, these, although made to different grantees, were yet both recorded together. If the father did deliver the deeds at their alleged date, there must have been collusion or the mortgages could not have been made. If he did not, then he still owned the property, and the record of the deed was collusive. The most favourable interpretation that can be placed on the case as presented by the evidence is that all that the father intended by the deeds was to place his entire property (for it does not appear that he had any other) in the names of his family to hold in trust for him. To allow his children to have it after his decease without the delays, formalities, and expenses incident to distribution after death. Is it not a reasonable conclusion that if

[Preston *v.* Jones.]

the father died while on his voyage to Europe, the children, it was intended, should at once have the estate under the deeds; if on the contrary he should return, he was not to be a pauper, not to be dependent on them for daily support, but to have his property as before.   That he considered it still his is shown by the mort-gages he made.

The learned judge, assuming the *bona fides* of the two deeds, and that the making of the mortgages was unknown to the sons, ruled out the evidence which tended to show the collusive character of the arrangement, and took from the jury that which it was their province to determine, an important part of the *res gesta.*

The evidence as to payment of the debts was not conclusive. It may have been very strong, but still the jury were to weigh it and believe or disbelieve it, according to their convictions.   Such payment was in no manner connected with the transfer of the pro-perties in this suit.

After a conveyance of land for value, the grantor can not make declarations to be received in evidence to the injury of his grantee. No one will dispute that proposition.   But this is a case,   ·

1st. Of a supposed gift where the donor exercised ownership in its most important feature, which he could not have done, unless he was the owner of the property or a confirmed swindler—so branded by his sons.

2d. Of a supposed gift kept secret and unrecorded, so that the neighbours were deceived and loaned their money to the donor. No searches in the public offices could show the existence of the title set up.

3d. Not idle declarations were offered here, but the most sub-stantial acts of ownership, based upon custody of title-papers.

If these mortgages had been admitted, attention could then have been directed to the question whether it was possible that the sons were ignorant of the making of such encumbrances, and .it would have been competent for them to give any explanation of the transaction.   But the learned judge wholly excluded from the jury the very acts of the grantor which, of all others, were the best evidence of the intentions of the parties when they made the deeds.

*Henry T. King* and *George M. Wharton,* for defendant in error.—The first three specifications of error touch the rejection of certain mortgages offered as evidence by the plaintiff.   They were rejected as irrelevant.   The plaintiff sought to avoid the deed from the father to the sons, upon the ground that it was given to defraud subsequent creditors.   As all creditors in exist-ence at its date were provided for and afterwards paid, it could not have been intended to defraud them.

Did the proof that such mortgages had been made by the father,

after the execution of the deed, go to show that the intention was to defraud creditors not then in existence ? The making of these mortgages was the act of the father, the grantor. No evidence was offered to show that the sons had knowledge of the making of these mortgages, much less of any confederation with the father. It was necessary to show this, in order to make the subsequent act of the father evidence against the sons.

Admit the statement of the law to be correct as made by plaintiff, that "the least degree of concert or collusion between the parties makes the act of one the act of all, and evidence against the others," still, the evidence of the "least degree of concert" or collusion is wanting in this case. The offer was to show the separate subsequent act of the grantor, not as evidence, after collusion had been proved, but as the proof of the collusion. All the argument of the plaintiff upon this head is but assertion, unsupported by proof. "The father had treated the property as his own," is one of the statements. The proof is, that immediately after this conveyance, his sons went into possession, and gave the most indisputable proof that the property was theirs, by the payment of the encumbrances upon it. They were not bound to put their title upon record, for the recording acts are not made for the benefit of creditors. As the sons were in this open, notorious possession, these creditors could not have trusted the father upon the strength of "his owning a valuable mill property and some nineteen dwelling-houses."

There is no evidence in the cause that the father had the custody of the deeds. The deeds are presumed to go with the title. James M. Preston could have told the plaintiff who had the custody of the deeds, but he was careful not to inquire.

There is no evidence whatever of a trust for the benefit of the father. There was nothing to found a trust upon, for, as has already been stated, though the deed was in form voluntary, yet it was in fact for a valuable and adequate consideration. The sons paid in money more than the property conveyed was worth : Pattison *v.* Stewart, 6 W. & S. 72 ; Shontz *v.* Brown, 3 Casey 123 ; Stafford *v.* Stafford, Id. 144. But even if that were not so, this deed would not be fraudulent ; for every existing debt was provided for and actually paid.

We must therefore treat this cause as though the father did not owe one dollar when this conveyance was made. There was no proof of any intention to defraud subsequent creditors ; for, as was said by Judge Sharswood, "All the evidence in this case is, that when this deed of gift was made, E. Preston, Sr., was in bad health, and went away on a voyage to England, and did not expect to return." The subsequent acts of the grantor or donor, where no evidence of knowledge, much less of collusion, existed, could not be admitted to prove that collusion.

[Preston *v.* Jones.]

The fourth specification needs no notice; no argument is adduced to support it.

The fifth alleges error in affirming the defendant's third point. That there was no evidence showing that the deed from the father to his son and son-in-law for this property was made in anticipation of future indebtedness on the part of the grantor, has been already sufficiently remarked upon. The proposition of law contained in that point, *i. e.*, that such a fact must be shown by the subsequent creditors who seek to defeat the deed, needs but to be stated.

The fourth point of defendant, the affirmance of which is the ground of plaintiff's sixth specification of error, is in the language of Lord Hardwicke, in Townsend *v.* Windham, 2 Vesey 11; Sexton *v.* Wharton, 8 Wheat. 229.

Defendant's sixth point, the subject of plaintiff's seventh specification, but states a fact of the cause. The deed was recorded February 1st 1858. The judgments under which the premises were sold, were entered, one November 20th 1858, the other April 20th 1861.

Plaintiff's eighth specification is the alleged error of affirming defendant's seventh point, which was copied from the syllabus of Shontz *v.* Brown, 3 Casey 123.

In answer to plaintiff's concluding propositions, it has been shown that this conveyance was not a gift, but was for a full, adequate, and valid consideration; though if a gift it was not void, for it defeated no existing creditor, and contemplated no subsequent one; that if the "donor" exercised ownership, it was his own separate act.

The opinion of the court was delivered, June 29th 1865, by

READ, J.—A voluntary deed by a person not indebted at the time, is good as against subsequent creditors of the grantor, but " if the purpose of a grantor in a voluntary conveyance be to withdraw the property from the reach of debts which he intends to contract; if such be his motive for the conveyance, no doubt it is invalid as against the debts subsequently incurred:" Snyder *v.* Christ, 3 Wright 506, per Strong, J. In New York the Court of Appeals, in Babcock *v.* Eckler, 10 Smith 623, held, that a voluntary conveyance by a husband to a wife, he retaining property of the value of $10,000, and being indebted in only the sum of $900, there is no legal presumption of fraud, but the question is one of fact. The intent to defraud must be inferrable from the circumstances, and if the facts show that the settlement upon the wife was a proper and reasonable one in the condition of the husband's estate, at the time, it will not be invalidated by his subsequent inability to pay a debt then existing. In Hinde's Lessee *v.* Longworth, 11 Wheat. 213, Justice Thompson said : " but the mere fact of being in debt to a small amount would not make the deed

14 WR.—5

[Preston *v.* Jones.]

fraudulent, if it could be shown that the grantor was in prosperous circumstances and unembarrassed, and that the gift to the child was a reasonable provision according to his state and condition in life, and leaving enough for the payment of the debts of the grantor."

In a late case, Spirett *v.* Willow, 11 Jurist N. S. 70, Lord Chancellor Westbury, in stating the rule in England, says: " There is some inconsistency in the decided cases on the subject of conveyances in fraud of creditors : but I think the following conclusions are well founded. If the debt of the creditor by whom the voluntary settlement is impeached, existed at the date of the settlement, and it is shown that the remedy of the creditor is defeated or delayed by the existence of the settlement, it is immaterial whether the debtor was or was not solvent after making the settlement. But if a voluntary settlement be impeached by subsequent creditors, whose debts had not been contracted at the date of the settlement, then it is necessary to show that the settlor made the settlement with express intent to ' delay, hinder, or defraud creditors,' or that after the settlement the settlor had not sufficient means or reasonable expectation of being able to pay his then existing debts, that is to say, was reduced to a state of insolvency, in which case the law infers that the settlement was made with intent to delay, hinder, or defraud creditors, and is therefore fraudulent and void. It is obvious that the fact of a voluntary settlor retaining money enough to pay the debts which he owes at the time of making the settlement, but not actually paying them, cannot give a different character to the settlement or take it out of the statute."

A conveyance by a father to his sons in consideration of an agreement on their part to pay his debts, is not fraudulent or void as to the creditors of the father : Pattison *v.* Stewart, 6 W. & S. 72 ; Shontz *v.* Brown, 3 Casey 123 ; Stafford *v.* Stafford, Id. 144. This is in fact the present case, with this distinction, that all the debts which formed the valuable and adequate consideration of the conveyances have been paid in full by the sons, and that the debts which now seek to declare the deeds fraudulent and void, were incurred at least two years afterwards, when the property was in full possession of the grantees, and the grantor had entirely ceased business during that period.

It is therefore the case of a deed for a valuable consideration, sought to be declared void as to subsequent creditors. We have examined the answers of the court to the third, fourth, sixth, and seventh points of the defendant below, and we see no error in them ; and the testimony rejected as stated in the first, second, third, and fourth specifications of error was properly rejected as irrelevant, there being no evidence showing any collusion or

[Preston *v.* Jones.]

knowledge whatever between the father and 'the grantees, as to the mortgages subsequently made by the father, and nothing was adduced to support the fourth.

Judgment affirmed.